Howard Solomon and Sylvia Solomon v. Commissioner. Myron Agrenovitz and Ruth Agrenovitz v. Commissioner. Abram Post and Harriet Post v. Commissioner.
Solomon v. Commissioner
Docket Nos. 56711-56713.
United States Tax Court
T.C. Memo 1957-167; 1957 Tax Ct. Memo LEXIS 84; 16 T.C.M. (CCH) 735; T.C.M. (RIA) 57167; August 30, 1957
H. E. Russert, Esq., 3119 Market Street, Youngstown, Ohio, and Sidney Rigelhaupt, Esq., for the petitioners. Morris E. Townsend, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined deficiencies in the income tax of the petitioners and additions to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for the years and in the amounts as follows: Docket
Addition
No.
Petitioners
Year
Deficiency
to Tax
56711
Howard Solomon and Sylvia Solomon
1952
$67.02
$2,108.52
1953
61.98
1,195.15
56712
Myron Agrenovitz and Ruth Agrenovitz
1952
54.40
2,035.99
56713
Abram Post and Harriet Post
1952
1,809.14
Issues presented by the pleadings are the correctness of the respondent's action (1) in disallowing a portion of the deductions taken by Howard Solomon and *86 Sylvia Solomon for 1952 and 1953 for sales tax, (2) in disallowing a portion of the deduction taken by Myron Agrenovitz and Ruth Agrenovitz for 1952 for contributions, and (3) in determining that Howard Solomon and Sylvia Solomon for 1952 and 1953, Myron Agrenovitz and Ruth Agrenovitz for 1952, and Abram Post and Harriet Post for 1952 were liable for additions to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939 for failure to file declarations of estimated income tax within the time required by law. Issues (1) and (2) were conceded by petitioners at the hearing thereby leaving only issue (3) for decision. Findings of Fact Some of the facts have been stipulated and are so found. Howard Solomon and Sylvia Solomon are husband and wife. Myron Agrenovitz and Ruth Agrenovitz are husband and wife and Abram Post and Harriet Post are also husband and wife. During the respective taxable years here involved the foregoing parties resided in Youngstown, Ohio, and filed their joint Federal income tax returns for such years with the district director in Cleveland, Ohio. Because the wives are here joined only by virtue of such joint returns, the term "petitioner" will hereinafter *87 be used with reference to the respective husbands. Petitioner Solomon is a registered architect. Petitioner Agrenovitz pursued an engineering course for about 3 1/2 years at Ohio State University. For a number of years prior to 1951 he was engaged in the grocery business. In the latter part of the 1940's Solomon and Agrenovitz became associated as partners in the conduct of a construction contracting business which they subsequently incorporated. Thereafter and until about 1953 they caused 8 or 9 other corporations to be organized for the conduct of that and other businesses. After the formation of the first corporation and about 1946 or 1947, Agrenovitz approached petitioner Post about entering the employment of the corporation which had been organized by Solomon and Agrenovitz, and Post accepted employment with it. Post was born about 1915 and graduated from Ohio State University in 1941 with the degree of Bachelor of Science of Administration. His major subject was accounting. While at the university he took a course in Federal taxation given there in 1940. Following his graduation Post entered the Army in which he served for approximately 4 years. During the latter 2 years *88 of that period he served in a depot company of the Engineer Corps where his duties related to the organization of stock controls and accounting methods. After being discharged from the Army he decided to engage in accounting work and spent 3 months reviewing his accounting studies. Then he entered the employment of Best Jewelry Company in Youngstown, Ohio, which had a number of stores. This was Post's first employment as an accountant and his duties consisted of performing accounting work and working on tax matters of the company. He left the foregoing employment to enter the employment of the Franco Cigar Company, which was engaged in the distribution of cigars in a business area comprising generally northern Ohio. His duties with the company consisted of performing accounting work and working on tax matters of that company. After working about 4 months for the Franco Cigar Company he left its employment to enter the employment of the above-mentioned corporation which had been organized by Solomon and Agrenovitz. Post did administrative and accounting work for the corporation, and, as various other corporations were subsequently organized, he rendered administrative service to them *89 as well as being in charge of installing and maintaining their accounting records. In addition, he handled the tax work of the corporations. After his military service Post made a study of Federal income taxation using "tax services" for that purpose. He has subscribed to one "tax service" since about 1945. Included in his study was attendance at two "tax lectures and seminars" at New York University, attendance at one of which was in 1951. All of the corporations by whom Post was employed have had their income and, upon occasion, their excess profits tax returns examined by respondent to and through the year 1952. In some instances the examination resulted in refunds of tax. In other instances the examination resulted in the determination of deficiencies but not of substantial amounts. In addition to handling the tax work of the above-mentioned corporations, Post has done some work for officers and employees of the respective corporations. In 1948 or 1949, petitioner Solomon turned over the handling of his personal income tax matters to Post who has continued to handle them. For various years prior to 1949, Solomon had filed declarations of estimated income tax and, upon turning *90 over the handling of his income tax matters to Post, he discussed with Post the question of whether he was required by law to file a declaration of estimated income tax and make payments of tax in March, June and September of each year. After examining the Internal Revenue Code, the income tax regulations relating thereto, and his "tax services" and conferring with a deputy collector who lived in Youngstown, Post advised Solomon that the filing of a declaration of estimated income tax and making payments of tax in March, June and September were not required of him if he filed a declaration of estimated income tax by January 15 of the following year and paid 80 per cent of the tax shown due thereon or if by January 15 of the following year he filed his income tax return and paid the full amount of tax shown due thereon and that compliance with either of the foregoing procedures would be adequate and in accordance with the law and would avoid the imposition of an addition to tax. Solomon relied on the advice thus given him and thereafter followed Post's advice through his taxable years here involved. With respect to the same problem involved in his own case in the year in issue, Post *91 acted in accordance with the advice he had given Solomon. During the early part of 1952, the respondent made an examination of the income tax returns of Solomon for the years 1949 and 1950 and accepted them as filed. For years prior to 1951, Agrenovitz employed Harry Hack, an accountant who operated as a tax consultant in Youngstown, to handle his personal income tax matters. Relying on Hack's advice, Agrenovitz did not file a declaration of estimated income tax for the years 1943 through 1950 but did for each year file his income tax return and pay the tax shown to be due thereon by January 15 of the following year. In 1951 Agrenovitz turned over the handling of his personal income tax matters to Post. Post advised Agrenovitz that Hack's advice was correct. Relying on Post's advice, Agrenovitz continued through the year in issue in his case to do as he had done theretofore, namely, not file any declaration of estimated income tax but file his income tax return and pay the tax shown to be due thereon by January 15 of the following year. During 1953 the respondent made an examination of Agrenovitz' income tax return for 1950 and determined that Agrenovitz was liable for an addition *92 to tax for failure to file a declaration of estimated income tax for that year. Agrenovitz took up the matter with Post and a protest was filed against the determination. Upon a denial of the protest Agrenovitz paid the addition to tax. The income tax return of petitioner Solomon and his wife for 1951 showed net taxable income of $53,375.48 for that year. Their income tax return for 1952 was filed on or before January 15, 1953, and showed gross income of $84,509.48, net income of $78,301.12 subject to tax, tax due of $39,170.64 and tax of $9,211.50 as having been withheld from his salaries during 1952. The balance of the tax shown on the return, $29,959.14, was paid at the time the return was filed. During 1952 they filed no declaration of estimated income tax for that year. Their income tax return for 1953 was filed on or before March 15, 1954, and showed gross income of $62,172.65, net income of $54,842.63 subject to tax, and tax due of $24,275.72. The latter amount was paid as follows: $10,114 was withheld from his salaries during 1953, $10,940 was paid at the time of filing a declaration of estimated income tax for 1953, which was after December 31, 1953, and on or before January 15, 1954, and *93 $3,221.72 was paid at the time their income tax return was filed. In their income tax return for each of the years 1952 and 1953, they listed four children as dependents. Solomon's basic salary from one corporation was $25,000 for each of the years 1952 and 1953. The income tax return of petitioner Agrenovitz and his wife for 1951 showed net taxable income of $56,906.03. Their income tax return for 1952 was filed on or before January 15, 1953, and showed gross income of $79,058.98, net income of $72,296.29 subject to tax, tax due of $36,552.90, and tax of $7,599.50 as having been withheld from his salary during 1952. The balance of the tax, $28,953.40, was paid at the time their income tax return was filed. During 1952 they filed no declaration of estimated income tax for that year. In their income tax return for 1952 they listed two children as dependents. The income tax return of petitioner Post and his wife for 1951 showed net taxable income of $50,557.83. Their income tax return for 1952 was filed on or before January 15, 1953, and showed gross income of $77,055.21, net income of $71,014.64 subject to tax, tax due of $35,316.46, and tax of $9,471.50 as having been withheld *94 from his salary during 1952. The balance of the tax, $25,844.96, was paid at the time their income tax return was filed. During 1952 they filed no declaration of estimated income tax for that year. In their income tax return for 1952 they listed one child as a dependent. There was no reasonable cause for the failure of any of the petitioners to file a declaration of estimated tax for 1952. There was no reasonable cause for the failure of petitioner Solomon to file a declaration of estimated tax for 1953 during the year 1953. Opinion The respondent contends that on the basis of the facts established herein the petitioners were required by the provisions of section 58 of the Internal Revenue Code of 1939, pertinent portions of which are set out below, [1] to file declarations of estimated income tax for 1952 on or before March 15, 1952, and that petitioner Solomon also was required to file a declaration of estimated income tax for 1953 on or before March 15, 1953. He further contends that the petitioners have not shown that their failure to file such declarations within the prescribed time was due to reasonable cause and not to willful neglect and that therefore his determination *95 that the petitioners are liable under section 294(d)(1)(A) of the Code [2] for the additions to tax here in controversy should be sustained. *96 The provisions of section 58 requiring the filing of a declaration of estimated tax are clear, explicit and mandatory. Rene R. Bouche, 18 T.C. 144, appeal dismissed (C.A. 2,); Howard M. Fischer, 25 T.C. 102; John Adrian Cooper, 25 T.C. 894. The petitioners agree that section 58 is clear and explicit and concede that they now know that they should have filed declarations of estimated income tax by March 15 of the taxable years in controversy. However, they contend that the provisions of section 294(d) of the Code and the regulations issued thereunder relating to additions to tax are complicated and confusing and on account thereof they believed during the years in question they were fully complying with the requirements of section 58 by not filing declarations of estimated income tax during the taxable years in question but by making payment of their tax as they did. They urge that they have shown reasonable cause for their failure to file timely declarations of estimated tax for the years involved. In support of their position as to reasonable cause the petitioners urge that they have shown that Solomon and Agrenovitz relied on the advice *97 of Post, that Post was competent tax counsel, and that he exercised ordinary business care and prudence in arriving at the opinion upon which he advised Solomon and Agrenovitz and upon which he acted in his own case. At the trial of these cases Post was asked to explain the basis of his advice to Solomon and Agrenovitz and upon which he himself also acted. He replied as follows: "Well, from reading Code Section 294 (d)(1)(A) it is very apparent that a declaration as such is necessary under the conditions of the salary and the earnings of these two gentlemen and myself. However, through further examination I came upon Regulations 111 and 19.294(1) wherein it substantially said in there that the filing of no declaration was the same as filing a zero declaration. Thereby, by filing no declaration my thought was that I could on January 15, the year following the tax date, I could amend my no declaration and have a valid declaration." Thereupon Post was asked the following questions to which he gave the indicated answers: "Q. Did you examine the requirements of Section 58? "A. I believe so. "Q. Do you know what those requirements are, what the provisions are with regard to the *98 salary amount; that is, your income amount? "A. Yes, I am aware of those amounts. "Q. And the provisions as to when it should be filed, when the declaration should be filed? "A. Correct." The regulations referred to by Post as the basis for his advice was [were] Regulations 111, section 29.294-1(b) (3)(A) relating to section 294(d)(2) of the Code which provided for an addition to tax in case of substantial understimate of estimated tax, the specific language involved being as follows: "In the event of a failure to file the required declaration, the amount of the estimated tax for the purpose of this provision is zero." See also Regulations 118, section 39.294-1 (b)(3)(a). The petitioners contend that the abovequoted portion of Regulations 111 confused Post in his interpretation of the provisions of section 58 of the Code and caused him to conclude that the failure to file a declaration on March 15 or June 15 or September 15 of a taxable year was the equivalent of filing a "zero declaration" on one of the foregoing dates and that such "zero declaration" could be "amended" by January 15 of the following year. It is obvious that to reach such a conclusion Post disregarded *99 the fact that the portion of the regulations in question related to section 294(d)(2) of the Code under which an addition to tax was imposed in case of a substantial underestimate of estimated tax and did not relate to section 294(d)(1)(A) which imposed an addition to tax in case of failure to file a declaration of estimated tax within the time required. Further, and most important, to reach such conclusion Post disregarded the admittedly plain provisions of section 58 of the Code as well as the regulations relating thereto. By accepting an inapplicable portion of the regulations relating to a sanction imposed for a substantial understimate of estimated tax as controlling over the provisions of section 58, it appears that Post was more concerned in finding a basis for avoiding the imposition of a sanction for failure to comply with the requirements of section 58 than he was in complying with those requirements. As justification for Post's interpretation and his failure to file a declaration of estimated tax for 1952, the petitioners make some general argument to the effect that Post's interpretation was widely recognized by accountants and lawyers, that it is common knowledge that *100 such an interpretation was placed on section 58 of the Code by respondent until 1952, and that it is common knowledge that agents of respondent informed taxpayers that the filing of a final return for a given taxable year by January 15 of the following year eliminated the necessity for filing a declaration of estimated tax for the taxable year. With respect to this argument it is observed that the petitioners neither alleged the foregoing matters as facts in their petitions nor have they established them as such by any proof submitted at the trial. Furthermore, at best it does not appear that such argument represents anything more than rumor that the respondent would not enforce the law. As was said in Howard M. Fischer, supra, "Reliance upon rumor that the Commissioner would not enforce the law amounts to willful neglect." As further justification for Post's interpretation and his failure to file a declaration of estimated tax for 1952, the petitioners contend that his view was substantiated by a deputy collector whom he consulted. The deputy collector was not offered as a witness at the trial herein nor does the record show that Post presented to him a factual situation *101 like or similar to that involved herein. The only matter shown by the record to have been presented to the deputy collector was whether - "a filing of either a declaration by January 15 of the following year, paying eighty per cent of the tax or by paying the full tax on January 15 of the following year the tax was due would be sufficient and in accordance with the law." The record is silent as to whether advising taxpayers was part of the duties of the deputy collector. However, the record does show that before expressing an opinion on the matter presented the deputy collector examined, not the Internal Revenue Code or the respondent's regulations but instead a pamphlet or book bearing the title, "Internal Revenue Agent's Manual," which it is not shown related in anywise to the matter before him. In the situation presented, we are unable to find that the fact that Post consulted with the deputy collector aids him here. Lawrence Block Co., 12 T.C. 366. As the record stands, Post's failure to file a declaration of estimated tax for 1952 was due to his mistake as to or ignorance of the law and that does not amount to reasonable cause which would relieve him from the *102 addition to tax under section 294(d)(1)(A). Walter M. Joyce, 25 T.C. 13. The remaining question is whether under the circumstances shown here, the reliance by Solomon and Agrenovitz on the advice of Post amounted to reasonable cause for their failure to file timely declarations of estimated tax. As was pointed out in Rene R. Bouche, supra, for the fact that a taxpayer has turned over the handling of his tax affairs to another, to constitute a defense against the consequences of failure to file a required declaration of estimated tax, it must appear that the intervening person was qualified to advise or represent the taxpayer in the premises and that the taxpayer relies on such qualifications. It is neither claimed nor shown here that Post was an attorney, or a certified public accountant, or that he had been licensed as a public accountant under the laws of any state, or that he had ever engaged or had ever been associated with anyone engaged in tax practice. His primary duties with the corporations by which he was employed related to administrative and accounting matters. While it is true that he handled the tax matters of those corporations and prepared *103 their income tax returns, it is also true that the respondent's audit of such returns resulted in deficiencies in tax being determined in some instances and refunds being determined in others. From a consideration of the foregoing, together with the fact that for a period of 5 years in the case of Solomon and a period of 3 years in the case of Agrenovitz, Post annually over the years gave them advice which was in direct contravention of the admittedly clear, explicit, and mandatory provisions of the Code relating to the filing of declarations of estimated tax, we are unable to find that he was actually or apparently qualified to give advice on the complicated questions which confront a tax adviser. Accordingly, we have found that there was no reasonable cause for the failure of petitioners Solomon and Agrenovitz to file declarations of estimated tax for 1952 and the failure of petitioner Solomon to file a declaration of estimated tax for 1953 during 1953. Decisions will be entered for the respondent. Footnotes
1. SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS. (a) Requirement of Declaration. - Every individual (other than an estate or trust and other than a nonresident alien with respect to whose wages, as defined in section 1621(a), withholding under Subchapter D of Chapter 9 is not made applicable, but including every alien individual who is a resident of Puerto Rico during the entire taxable year) shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if - (1) his gross income from wages (as defined in section 1621) can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25(b); or (2) his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more. (b) Contents of Declaration. - In the declaration required under subsection (a) the individual shall state - (1) the amount which he estimates as the amount of tax under this chapter for the taxable year, without regard to any credits under sections 32 and 35 for taxes withheld at source and without regard to the tax imposed by subchapter E on self-employment income; (2) the amount which he estimates as the credits for the taxable year under sections 32 and 35; and (3) the excess of the amount estimated under paragraph (1) over the amount estimated under paragraph (2), which excess for the purposes of this chapter shall be considered the estimated tax for the taxable year. The declaration shall also contain such other information for the purposes of carrying out the provisions of this chapter as the Commissioner, with the approval of the Secretary, may by regulations prescribe, and shall contain or be verified by a written statement that it is made under the penalties of perjury. * * *
(d) Time and Place for Filing. - (1) In general. - The declaration required under subsection (a) shall be filed on or before March 15 of the taxable year, except that if the requirements of section 58(a) are first met (A) after March 1 and before June 2 of the taxable year, the declaration shall be filed on or before June 15 of the taxable year, or (B) after June 1 and before September 2 of the taxable year, the declaration shall be filed on or before September 15 of the taxable year, or (C) after September 1 of the taxable year, the declaration shall be filed on or before January 15 of the succeeding taxable year. (2) Amendment of declaration. - An individual may make amendments of a declaration filed during the taxable year under this subsection, under regulations prescribed by the Commissioner with the approval of the Secretary. If so made, such amendments may be filed on or before the fifteenth day of the last month of any quarter of the taxable year subsequent to that in which the declaration was filed and in which no previous amendment has been filed, except that in the case of an amendment filed after September 15 of the taxable year, it may be filed on or before January 15 of the succeeding taxable year. Declarations and amendments thereof shall be filed with the collector specified in section 53(b)(1). (3) Return as declaration or amendment. - If on or before January 15 of the succeeding taxable year the taxpayer files a return, for the taxable year for which the declaration is required, and pays in full the amount computed on the return as payable, then, under regulations prescribed by the Commissioner with the approval of the Secretary - (A) If the declaration is not required to be filed during the taxable year, but is required to be filed on or before such January 15, such return shall, for the purposes of this chapter, be considered as such declaration; and (B) If the tax shown on the return (reduced by the credits under sections 32 and 35) is greater than the estimated tax shown in a declaration previously made, or in the last amendment thereof, such return shall, for the purposes of this chapter, be considered as the amendment of the declaration permitted by paragraph (2) to be filed on or before such January 15. ↩
2. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
(d) Estimated Tax. - (1) Failure to file declaration or pay installment of estimated tax. - (A) Failure to file Declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35. (2) Substantial underestimate of estimated tax. - If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), in the case of individuals other than farmers exercising an election under section 60(a), or 66 2/3 per centum of such tax so determined in the case of such farmers, exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. This paragraph shall not apply to the taxable year in which falls the death of the taxpayer, nor, under regulations prescribed by the Commissioner with the approval of the Secretary, shall it apply to the taxable year in which the taxpayer makes a timely payment of estimated tax within or before each quarter (excluding, in case the taxable year begins in 1943, any quarter beginning prior to July 1, 1943) of such year (or in the case of farmers exercising an election under section 60(a), within the last quarter) in an amount at least as great as though computed (under such regulations) on the basis of the taxpayer's status with respect to the personal exemption and credit for dependents on the date of the filing of the declaration for such taxable year (or in the case of any such farmer, or in the case the fifteenth day of the third month of the taxable year occurs after July 1, on July 1 of the taxable year) but otherwise on the basis of the facts shown on his return for the preceding taxable year.↩